RECEIVED

MAY 27 2011

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHESAPEAKE LOUISIANA, L.P., ET AL. | CIVIL ACTION NO: 09-1385 |
| VERSUS | JUDGE DONALD E. WALTER |
| PETROHAWK PROPERTIES, L.P | MAGISTRATE JUDGE HORNSBY |

## RULING ON THE MERITS

A three day bench trial was held in the above captioned matter. This Court heard all testimony and reviewed all evidence presented. At the conclusion of the trial the Court made certain findings which are incorporated in this ruling. *See* Doc. #143, Transcript at 425.

As stated at the beginning of trial, the parties agreed that the only issues that remained to be tried are the Stockmans' claims for fraud, failure of consideration, and novation. *Id.* Chesapeake's only remaining claim is for intentional interference with a contract. *Id.* Petrohawk also has a prayer for the issuance of a judgment declaring the Petrohawk lease to be in full force and effect; and, alternately, should they lose that issue, a counterclaim for the return of the bonus money paid. *Id.*

This Court is bound by *Erie Railroad v. Thompkins*, 304 U.S. 64 (1938), to apply Louisiana law to the substance of this case.

### The Stockman's claims for fraud, failure of consideration, and novation

Turning to the first question of fraud, the Court begins its analysis with Article 9 of the Louisiana Civil Code: "When the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."

Louisiana Civil Code Article 1927: "A contract is formed by the consent of the parties established through offer and acceptance."

Louisiana Civil Code Article 1948: "Consent may be vitiated by error, fraud, or duress."

Louisiana Civil Code Article 1953: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

Louisiana Civil Code Article 1954: "Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience or special skill. This exemption does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations."

Louisiana Civil Code Article 1955: "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent."

Louisiana Civil Code Article 1957: "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."

After listening to the evidence presented over the course of the trial, there are three things clear to the Court. First, Petrohawk (through its agents Pangea and Lisa Broomfield) was in a frenzy to get the Stockman lease. The emails and testimony presented leave no doubt to the Court that Petrohawk was absolutely frantic to get this lease and, in the Court's opinion, were willing to say or do anything to obtain it. *See* Doc. #143, Transcript at 425-26.

Secondly, Petrohawk wanted to have their cake and eat it too. It was easy for Petrohawk to promise payment in thirty days, as they did. This Court doubts that Petrohawk ever had any intention

of honoring the promise to pay on the date it was due. Petrohawk wanted their place in line and no risk. *Id.* at 427.

Third, Mr. Stockman was a willing and greedy listener to everything that Petrohawk/Pangea's landman had to say. The fact that Mr. Stockman wanted to believe what Ms. Broomfield had to say does not change the result. Mr. Stockman did believe Ms. Broomfield, as evidence by the testimony of Mr. Stockman and Ms. Broomfield. *Id.*

The Court does not believe that the initial Petrohawk lease would have been signed by Mr. and Mrs. Stockman had they not been led to believe that the unrecorded Chesapeake extension would be invalid upon the recording of the May 9, 2008, Petrohawk lease. Mr. Stockman's reliance on Ms. Broomfield's statements, in the light of all the circumstances, was reasonable. *Id.* The Stockman's action in going to the clerk's office to make sure that the Chesapeake extension had not been filed makes it more credible that Mr. Stockman believed what he had been told -- that only Petrohawk's lease was valid. *Id.* Relying on this belief he could then send the money back to Chesapeake and deposit the check from Petrohawk. *Id.*

Ms. Broomfield did not clearly recall her exact conversation with Mr. Stockman. But, the Court has no doubt that the validity or invalidity of the Chesapeake extension was discussed. *Id.* at 427-48. The Court believes that Ms. Broomfield kept using the terms "valid" and "invalid", which led Mr. Stockman to reasonably to believe that, upon the filing of the Petrohawk lease, the Chesapeake extension would be invalid. *Id.* at 428.

Fraud in the formation of a contract renders the contract voidable. Therefore, the first Petrohawk lease was merely voidable. The Court now finds that the first Petrohawk lease is rescinded. *Id.* Accordingly, there is no need for the Court to reach the questions of consideration

or novation, one cannot novate a void contract. *Id.*

Louisiana Civil Code Article 1958: "The party against whom rescission is granted because of fraud is liable for damages and attorney's fees." The Court declines to award damages to the Stockmans. However, Petrohawk shall pay the Stockman's attorney, Mr. John Madison, reasonable attorney's fees and costs.

Petrohawk shall also pay the costs associated in correcting the public records to strike the May 9, 2008, Petrohawk-Stockman agreement. This correction shall be made to the satisfaction of Chesapeake.

### Chesapeake's claim for intentional interference with a contract

Chesapeake asserted a claim against Petrohawk for the intentional interference with a contract. Chesapeake presents its claim under The Restatement of Torts, which requires that there must be the existence of a contract, knowledge of that relationship by a third party, intent of the third party to induce a party to the relationship to breach that relationship, a lack of privilege on the part of the third party to induce such breach, and the contractual relationship being breached causes damages. *Id.* at 428-29. Under the elements of the Restatement, Petrohawk would be liable to Chesapeake. However, Louisiana is not a common law state and does not follow the Restatement. This court is bound by *Erie* to follow Louisiana law on this issue as set forth in the decision *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989). The *9 to 5 Fashions* court defined the elements as: (1) a contract or legally protected interest must exist between the plaintiff and the corporate defendant; (2) the corporate actor must know of the contract; (3) the officer must intentionally induce or cause the corporation to breach the contract; (4) there must be an absence of justification on the part of the corporate actor; and (5) the breach of contract must cause damages

4

to plaintiff. The Louisiana Supreme Court included specific language in *9 to 5 Fashions* stating that it did not intend to adopt "whole and undigested the fully expanded common law doctrine of interference of a contract." Rather, the Court limited the case to only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person. *Id.*

The Fifth Circuit has declined to expand the scope of the law beyond the context of matters involving a corporate officer. *American Waste and Pollution Control Co. v. Browining-Ferris, Inc.*, 949 F.2d 1286, 1391 (5th Cir. 1991). Accordingly, Chesapeake's claim against Petrohawk for the intentional interference of a contract is dismissed with prejudice.

<u>Petrohawk's counterclaim for a return of the bonus money paid to the Stockmans.</u>

Frankly, the only clean hands in this case are those of Chesapeake. Neither Petrohawk nor the Stockmans are. As much as this Court may wish to do otherwise the law is clear.

The Court has rescinded the May 9, 2008, lease between the Stockmans and Petrohawk. Once a contract has been declared null it is deemed to never have existed, and the parties must be restored to the situation which existed before the contract was made. Louisiana Civil Code Art. 2033. However, the evidence at trial established that Petrohawk made a conscious business decision not to pay the Stockmans the bonus money according to the terms of the May 9, 2008, lease. The due date of the draft fell before the expiration of the original Stellios lease, to which Chesapeake had a validly recorded extension. Given the risk that Chesapeake would begin operations in the interim, Petrohawk intentionally dishonored the draft given to the Stockmans as payment for the May 9, 2008, lease.

The bonus money paid by wire transfer on July 15, 2008, was a higher amount negotiated

between the Stockmans and Petrohawk in exchange for the delay in payment to make certain that Chesapeake had not begun operations. The July 15, 2008, agreement between the Stockmans and Petrohawk is sufficient to stand on its own while incorporating the contents of the May 9, 2008, lease. It is perfectly permissible to incorporate by reference the terms of a separate writing into a contract when the parties intended it to have such effect. *Action Finance Corp. v. Nichols*, 180 So.2d 81 (La. App. 1965). This is so even if the that document is not legally binding, as in this case.

The May 9, 2008, lease included a scratched through warranty of title provision. There is no warranty provision in the July 15, 2008, agreement. Petrohawk argues that the bonus money should be returned via an implied warranty provision allowed pursuant to Article 120 of the Louisiana Mineral Code, which provides that "[a] mineral lessor impliedly warrants title to the interest leased unless such warranty is expressly excluded or limited." There is no doubt to this Court that the July 15, 2008, lease incorporates by reference the May 9, 2008, lease except for the minor changes in the land description and the addition of three clauses - none of which reference warranty of title. Therefore, there can be no implied warranty provision in the July 15, 2008, agreement because the warranty provision was specifically stricken from the May 9, 2008 lease, whose terms were incorporated. Accordingly, Petrohawk's counterclaim for a return of the bonus money paid to the Stockmans is dismissed with prejudice.

The parties are instructed to submit an agreed upon Judgment to the Court reflecting this Court's ruling herein.

THUS DONE AND SIGNED, this 27 day of May, 2011.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE